**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GREGORY KEENER,       )
      )
      Plaintiff,       )       CIVIL ACTION NO. 18-883
      )
      v.       )       JUDGE NORA BARRY FISCHER
      )
ALEXANDER HRIBAL; TINA HRIBAL,       )
individually and as parent and natural       )
guardian of Alexander B. Hribal; HAROLD       )
HRIBAL, individually and as parent and       )
natural guardian of Alexander B. Hribal;       )
CAPITAL ASSET PROTECTION, INC.;       )
FRANKLIN REGIONAL SCHOOL       )
DISTRICT,       )
      )
      Defendants.       )
      )

## <u>MEMORANDUM OPINION</u>

### Table of Contents

I.   Introduction ................................................................................................ 2

II.   Background ................................................................................................. 3

III.   Jurisdiction ............................................................................................... 5

IV.   Procedural history ..................................................................................... 5

V.   Standard of review .................................................................................... 5

VI.   Discussion ................................................................................................ 7

    A.     Tina Hribal and Harold Hribal's motion to dismiss (Doc. No. 12) ................ 7

    B.     Capital Asset Protection's motion to dismiss (Doc. No. 20) ......................... 12

    C.     Franklin Regional School District's motion to dismiss (Doc. No. 29) ........... 14

        1.     Substantive due process right to bodily integrity ........................................ 15

        2.     The state-created danger doctrine .............................................................. 16

        3.     *Monell* liability ...................................................................................... 26

VII.   Conclusion ............................................................................................... 29

## I.     Introduction

More than 20 years ago, the Tenth Circuit Court of Appeals stated: "We are poignantly aware of the seeming transformation of our public schools from institutions of learning into crucibles of disaffection marred by increasing violence from which anguish and despair are often brought to homes across the nation." *Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 992 (10th Cir. 1994). It is disheartening, to say the least, that this statement still rings true today. In yet another tragic — and indeed senseless — instance of school violence, this matter is now before the Court.

Plaintiff Gregory Keener brings this cause of action against defendant Alexander Hribal, a former classmate of his, who brought two kitchen knives to school and proceeded to stab 20 of his classmates in a seven-minute rampage. Plaintiff barely survived his life-threatening injury. In addition to suing the perpetrator, he sues Alex Hribal's parents, along with the school district and a private security company that performed services at the school.

Plaintiff raises various state law claims for negligence and battery, as well as federal civil rights claims under 42 U.S.C. § 1983. Each of the defendants now brings a motion to dismiss for failure to state a claim. Doc. Nos. 12, 20, and 29. For the reasons that follow, both the parents' motion and the security company's motions will be denied. The school district's motion will be granted. Plaintiff will have 21 days to file an amended complaint that states a viable cause of action under Section 1983; otherwise, this case will be remanded to the state courts.

## II. Background

Plaintiff Gregory Keener brings this cause of action against the following defendants: Alexander Hribal; Tina and Harold Hribal — the parents of Alexander Hribal (the "parents"); Capital Asset Protection, Inc. ("Capital"); and Franklin Regional School District (the "school district"). As mentioned above, the suit arises out of a stabbing rampage perpetrated by Alexander Hribal, which occurred on April 9, 2014. At approximately 7:00 a.m., Alexander Hribal arrived at Franklin Regional High School (the "school") armed with two 12-inch kitchen knives taken from his parents' home. Doc. No. 1-2 ¶ 13. Alexander Hribal stabbed 20 students and a security guard in the attack. *Id.* ¶ 14. One of those students was plaintiff, who suffered severe injuries. Plaintiff barely survived; he was hospitalized for nearly 40 days, underwent several surgeries, and lost half the function of his liver and gallbladder. *Id.* ¶¶ 18–23.

Plaintiff brings claims against Alexander Hribal for battery (Count I), intentional infliction of emotional distress (Count II), negligent infliction of emotional distress (Count III), and negligence (Count IV). In addition, plaintiff brings a negligence claim (Count V)[1] against the parents. With respect to the parents, plaintiff asserts that they acted negligently because they knew that their child was mentally ill and potentially dangerous, yet they failed to take adequate steps to prevent the attack. *Id.* ¶¶ 48–58.

Plaintiff also brings a negligence claim (Count VI) against Capital Asset Protection, Inc. The school district hired Capital to perform security services for all buildings and schools in the

---

[1] There is a passing reference in Count IV to vicarious liability on the part of the parents. Nevertheless, plaintiff maintains that he brings just one cause of action for negligence against the parents (Count V), which is not premised on vicarious liability. *See* Doc. No. 28 at 2. In addition, Count IV is captioned solely against Alexander Hribal. Accordingly, the Court interprets just one cause of action against the parents (Count V) and does not consider any vicarious liability claims involving the parents. Finally, even if plaintiff did raise such a claim, it would be meritless. *See infra* Part VI(A).

district, including Franklin Regional High School. *Id.* ¶¶ 9–10. According to plaintiff, Capital assigned just one security guard to perform security services at the school. The guard, who was 70 years old at the time, was "grossly unqualified, ill-equipped and physically incapable of deterring or stopping the attack, or any other legitimate safety threat to students." *Id.* ¶ 25. When the attack occurred, the guard allegedly yelled to students to "get out of the building." *Id.* ¶ 24. The guard was stabbed during the incident. *Id.*

With respect to the claim against Capital Asset Protection, Inc., plaintiff alleges numerous theories for negligence, to include its failure to implement adequate safety procedures, its failure to exercise reasonable care in selecting employees to perform security services, and its failure to adequately train personnel. *Id.* ¶ 63. Plaintiff also seeks punitive damages, asserting that Capital's failure to develop and implement adequate safety procedures constituted "willful and wanton indifference" toward his health and well-being. *Id.* ¶ 64.

Finally, plaintiff brings two constitutional claims against Franklin Regional School District via 42 U.S.C. § 1983. First, plaintiff asserts in Count VII that the school district violated his constitutional right to bodily integrity under the Fourteenth Amendment, which the Court interprets as a municipal liability claim. He then asserts in Count VIII another Fourteenth Amendment due process claim under a "state-created danger" theory. In short, plaintiff maintains that the school district adopted "a practice, custom and policy of deliberate indifference" to his safety and welfare; he further contends that the school district failed to hire a competent and prepared security company, despite its knowledge that the students faced "substantial risk of serious harm or death" as a result of an attack like the one that occurred. *See generally id.* ¶¶ 65–90. Plaintiff also seeks punitive damages against the school district. *Id.* ¶ 91.

## III.    Jurisdiction

The Court exercises subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.  Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## IV.    Procedural history

Plaintiff filed his complaint in the Court of Common Pleas of Westmoreland County on May 14, 2018.  Doc. No. 1 at 2.  The school district filed a notice of removal on July 6, 2018.[2]  *Id.*

With respect to the instant motions, the parents filed a motion to dismiss on July 16, 2018. Doc. No. 12.  Capital filed a motion to dismiss on July 20, 2018.  Doc. No. 20.  Finally, the school district filed a motion to dismiss on August 13, 2018.  Doc. No. 29.  On September 18, 2018, the Court held oral argument on these motions.  Doc. No. 37.  The matters have been fully briefed (see Doc. Nos. 13, 21, 24, 25, 27, 28, 30, 31, 32, and 33) and are ripe for disposition.

## V.    Standard of review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies the plausibility standard when the facts alleged "allow[ ] the court to draw the reasonable

---

[2] None of the parties have raised any issues about the removal procedures and whether removal was proper. As pled in the complaint, Alexander Hribal is incarcerated at a state prison in Cumberland County, Pennsylvania.  Doc. No. 1-2 ¶ 2.  To date, Alexander Hribal has not participated in this suit, and no counsel has entered an appearance on his behalf.  Although he did not consent to this removal action, removal is proper because he had not been served at the time the removing defendants filed their petition.  *See* Doc. No. 1 at 2 ¶ 6; 28 U.S.C. §§ 1441 and 1446, *see also Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985) (stating an exception to the general rule that all defendants must join the removal petition "provided that it alleges that the defendants who did not join in it were not served in the state proceeding").

inference that the defendant is liable for the misconduct alleged." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220–21 (3d Cir. 2011) (citing *Iqbal*, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" *Twombly*, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678. Avoiding dismissal under Rule 12(b)(6) thus requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "nudge his or her claims across the line from conceivable to plausible." *Phillips*, 515 F.3d at 234–35 (quoting *Twombly*, 550 U.S. at 556, 570) (brackets omitted).

In deciding a 12(b)(6) motion, courts in this circuit apply a three-step analysis: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679; *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011)).

In making the third determination in this three-step analysis, the Court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and, as noted, it must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assoc., Ltd.*, No. 08-207, 2008 WL 2312671 (W.D.

Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of [the] facts is improbable," will not be dismissed if the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555–56).

Nevertheless, the facts provided must raise the expectation of relief above a purely speculative level, which includes more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 554–56). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief." *Id.* "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

## VI. Discussion

With that legal framework in mind, the Court now turns to each of the motions to dismiss.

### A. Tina Hribal and Harold Hribal's motion to dismiss (Doc. No. 12)

As discussed above, plaintiff brings one state law claim (Count V) against the parents. He asserts that they were negligent in failing to prevent the attack despite having knowledge of their son's mental illness and his propensity for violence. *See generally* Doc. No. 1-2 ¶¶ 53–58. In their motion to dismiss, the parents argue that a parent-child relationship, alone, is insufficient to render them liable for the tortious actions of their child. Doc. No. 12 at 2. To that end, they claim that they did not have the ability or the opportunity to control their child, nor did they have knowledge of his plan to carry out the attack. *Id.* Furthermore, the parents seek to dismiss plaintiff's claim for punitive damages. *Id.* at 4.

It is well-established that a federal court shall apply Pennsylvania substantive law and federal procedural rules to the resolution of state law claims. *See Erie Railroad Company v.*

*Tomkins*, 304 U.S. 64 (1938)).  Accordingly, Pennsylvania law governs the disposition of the plaintiff's state law claims.

Ordinarily, "[t]he mere relation of parent and child imposes no liability upon the parent for the torts of the child." *J.H. ex rel. Hoffman v. Pellak*, 764 A.2d 64, 66 (Pa. Super. Ct. 2000) (citing *Condel v. Savo*, 39 A.2d 51, 52 (Pa. 1944); *Maxwell v. Keas*, 639 A.2d 1215, 1216 (Pa. Super. Ct. 1994)).  Parents, however, are not always insulated from liability for tortious acts of their children. "Parents may be liable . . . where negligence on the part of the parents makes the injury possible." *J.H.*, 764 A.2d at 66 (citing *Frey By & Through Frey v. Smith By & Through Smith*, 685 A.2d 169, 174 (Pa. Super. Ct. 1996)); *see also K.H. v. J.R.*, 826 A.2d 863, 873 (Pa. 2003).  "If the injury ought to have been foreseen by the parents, their negligence is the proximate cause of the injury." *Maxwell*, 639 A.2d at 1215.  Parental duty to supervise a child has been characterized as a duty to "exercise the control which they [the parents] have over their child, when they know, or in the exercise of due care should know, that injury to another is a natural and probable consequence." *Condel*, 39 A.2d at 53.

Regarding the supervisory responsibilities of a parent, Pennsylvania Courts have adopted the Restatement (Second) of Torts, Section 316:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>
> (a) knows or has reason to know that he has the ability to control his child, and
>
> (b) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 316; *see J.H. ex rel. Hoffman v. Pellak*, 764 A.2d 64, 66 (Pa. Super. Ct. 2000) (stating that Pennsylvania has adopted Section 316); *K.H. v. J.R.*, 826 A.2d 863,

873 (Pa. 2003) (quoting Section 316 with approval). The "ability" and "opportunity" elements do not require a parent to be physically present at the "exact instant of the tort"; nevertheless, there must be some "present ability to discipline." *K.H.*, 826 A.2d at 875. Along these lines, parental liability is conditioned on the parent having (1) notice of a specific type of harmful conduct, and (2) a meaningful opportunity to interfere with it at the relevant time. *J.H.*, 764 A.2d 64, 67 (Pa. Super. Ct. 2000) (collecting cases).

In reviewing the complaint, the Court finds that the negligence claim against the parents is legally sufficient to survive a challenge under Rule 12(b)(6). A parent has a duty of reasonable care to prevent harm to another when that harm is a natural and probable consequence. The necessary elements center on (1) *notice* of a specific type of harmful conduct and (2) an *ability* to interfere at the relevant time. Plaintiff alleges in the complaint that the parents were "aware of their son's intent to carry out this attack, and were otherwise acutely aware of [their son's] serious mental illness(es) and propensity for violence prior to the attack." Doc. No. 1-2 ¶ 28. Plaintiff avers several times that the parents had actual knowledge of their son's mental illness and violent tendencies prior to the attack. *Id.* ¶ 28, 55, 56, 57. Plaintiff further alleges that the parents knew, or reasonably should have known, about their son's manifesto where he plotted his attack prior to its execution. *Id.* ¶ 57. These well-pleaded facts, when viewed in the light most favorable to plaintiff, suggest that the parents had notice of the potential harm.

Furthermore, regarding the parents' ability and opportunity to prevent the harm, plaintiff asserts that the weapons used in the attack (i.e., the 12-inch knives) came from the parents' home. *Id.* ¶ 12. Plaintiff further claims that the parents could have prevented the attack by taking reasonable steps such as (1) keeping their son out of school; (2) ensuring he took his duly prescribed medications; (3) involuntarily committing their son to an inpatient mental health

facility; and/or (4) otherwise taking additional steps to seek out appropriate medical treatment. *Id.* ¶ 56. As discussed above, the ability and opportunity to prevent the harm does not require the parents to be physically present at the time of the attack; instead, what matters is that the parents had some *opportunity to control* their child at the *relevant time*. Here, the relevant time would have been *prior* to the attack, as plaintiff contends in the complaint.

Although plaintiff does not provide significant details to support his claim against the parents, the well-pleaded factual allegations do render the claim *plausible*. The complaint includes more than mere labels and conclusions. Moreover, the pleading standard does not require "detailed factual allegations." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Rather, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).

In their motion to dismiss, and at oral argument, parents' counsel spent considerable time discussing *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 247 (W.D. Pa. 2015) (Hornak, J.). That case involved a high school student who participated in a training camp for members of the school's football team. The student broke his arm after an older, much larger player injured him in a one-on-one blocking drill during the camp. There, the court dismissed a negligence claim against the parents of the older child, finding that plaintiff failed to allege any facts indicating that the parents had any reason to know that their son was so reckless, aggressive, or violent that he should not be allowed to participate in a contact sport, or that they had the ability and opportunity to control him when he was under the supervision of his coaches at the camp. *Id.* Here, that case

is distinguishable. Plaintiff alleges that the parents had been acutely aware of their son's violent propensities prior to the attack. There was no such allegation in *Dorley*.[3]

As an additional matter, the parents move to dismiss or strike plaintiff's request for punitive damages. Doc. No. 12 at 3. Under Pennsylvania law, punitive damages are proper "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). Although ordinary negligence will not support an award of punitive damages, they are appropriate "for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured." *Id.* at 120 (citing RESTATEMENT (SECOND) OF TORTS § 908 (1979)); *see also Moran for & on Behalf of Estate of Moran v. G. & W.H. Corson, Inc.*, 586 A.2d 416, 422 (1991). "The state of mind of the actor is vital." *Hutchison*, 870 A.2d at 770 (internal citations omitted). To that end, punitive damages must be supported by evidence "sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 772.

Here, plaintiff has pled sufficient facts that, if proven at trial, could support the imposition of punitive damages. Plaintiff has pled that the parents knew about their son's intent to carry out the attack, and that they were aware of his serious mental illness and propensity for violence. Doc. No. 1-2 ¶¶ 28, 55, 56. Furthermore, plaintiff alleges that the parents knew about their son's manifesto before the attack. *Id.* ¶ 57. Yet, despite having knowledge of the serious risk of harm

---

[3] Judge Hornak stated: "There is no allegation that [the older student] had harmed the Plaintiff or others in the past and the parents knew about that, and certainly nothing from which to infer that the Parent Defendants knew or reasonably should have known that their child was impermissibly violent." *Dorley,* 129 F. Supp. 3d 220, 248 (W.D. Pa. 2015).

to students, the parents failed to act in conscious disregard of that risk. *Id.* These allegations, if proven, may support a claim for punitive damages. The Court thus finds that dismissing plaintiff's punitive damages claim at this stage of litigation would be premature.

### B.    Capital Asset Protection's motion to dismiss (Doc. No. 20)

The Court now considers plaintiff's punitive damages claim against Capital Asset Protection, Inc., found in Count VI of the complaint. Capital argues that plaintiff has failed to state a claim for punitive damages because (1) he fails to allege that Capital knew or reasonably should have known about the risk of the stabbing rampage; (2) the complaint, at most, raises issues of inadequate safety procedures, which does not amount to recklessness; and (3) the 70-year-old employee's conduct, as pled in the complaint, was not outrageous. *See* Doc. No. 21 at 3–4.

As discussed previously, punitive damages are only permissible for outrageous acts. The plaintiff must demonstrate that "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison*, 870 A.2d at 772; *see also Stroud v. Abington Mem'l Hosp.*, 546 F. Supp. 2d 238, 257 (E.D. Pa. 2008) ("[P]rovided the plaintiff demonstrates that the defendant acted with at least a mental state of recklessness (conscious disregard), punitive damages may be recovered on a claim sounding in negligence.").

Here, plaintiff alleges that Capital was hired by the school district to perform security services for the school. Doc. No. 1-2 ¶ 11. He further pled that Capital hired a 70-year-old guard who was unarmed and physically incapable of deterring any legitimate safety threats at the school. *Id.* ¶¶ 24, 25. In addition, plaintiff pled in some factual detail how the company was ineffective at preventing or stopping the attack. *Id.* ¶¶ 10–30, 62. Among other things, plaintiff pled that

(1) Capital failed to develop or implement adequate safety procedures;

(2) Capital failed to properly select, hire, retain, monitor, supervise, and evaluate its employees; and

(3) The security guard intentionally shirked his duty by failing to take appropriate mitigating action during the attack.

*See generally id.* ¶ 62. Plaintiff alleges that these negligent acts establish willful and wanton indifference and conscious disregard for his health and well-being. *See id.*

The Court finds that plaintiff has sufficiently pled a claim for punitive damages against Capital to survive a motion to dismiss. Read in the light most favorable to plaintiff, these averments sufficiently allege that Capital knew of the risk of harm to plaintiff – given that Capital was specifically hired to perform security services for the school – and that Capital's actions were sufficiently outrageous based on its reckless mental state.[4] While the Court declines to dismiss plaintiff's punitive damages claim at the pleading stage, it certainly acknowledges Capital's well supported argument that plaintiff faces a substantial burden to prove his entitlement to punitive damages in this case. This contention can be raised again at a later stage of litigation.

Finally, the Court briefly addresses Capital's reliance on *Feld v. Merriam*, 485 A.2d 742 (Pa. 1984). There, defendant sought to hold a landlord liable for criminal acts of unknown third parties. The Court held that the trial court erred in submitting the issue of punitive damages to the jury because the type of danger at issue was not "an easily perceptible one." *Id.* at 748. "In

---

[4] The Court must also draw all reasonable inferences from the facts alleged in the light most favorable to plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Here, Capital knew that they would be providing security services at a high school — a reasonable inference to draw is that they would be monitoring students between the ages of 14 and 18. Many of those students, particularly male students, would have significant size and strength. One could question Capital's decision to employ one 70-year-old man, who had no protective gear or weapons of any kind, given that he would be responsible for stopping security threats involving physically well-developed teenagers in a high school setting.

deciding whether to impose punitive damages a court should not look to the third party's criminal conduct, which in this case was truly outrageous; a court should not look at the end result, which in this case also was outrageous; rather, the court should examine the actor's conduct." *Id*.

Here, *Feld* is instructive on punitive damages. Nevertheless, the *Feld* ruling was not made at the pleading stage. The court in that instance had the benefit of a fully developed record, including a jury verdict. Furthermore, at this stage, this Court need not determine whether as a matter of law Capital acted with the state of mind necessary to impose punitive damages. "[T]he clear trend in this Circuit is to permit adequately pled claims of punitive damages based on negligence to proceed to discovery." *Young v. Westfall*, No. 406-CV-2325, 2007 WL 675182, at *3 (M.D. Pa. Mar. 1, 2007). Accordingly, Capital's motion to dismiss will be denied.

### C.    Franklin Regional School District's motion to dismiss (Doc. No. 29)

This matter is in federal Court based on alleged civil rights violations. Plaintiff brings two claims pursuant to 42 U.S.C. § 1983. Specifically, in Count VII, he asserts a substantive due process violation under the Fourteenth Amendment for "injury to bodily integrity." Although not expressly stated in these terms, the Court interprets the allegations in Count VII as raising a municipal liability claim under *Monell v. Dep't of Soc. Servs*., 436 U.S. 658 (1978), and its progeny. In Count VIII, plaintiff further alleges a substantive due process violation resulting from the "state-created danger" doctrine.[5] The school district alleges that each count fails to state a claim.

The pertinent language of 42 U.S.C. §1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

---

[5] The Court notes that plaintiff's complaint, in the heading at Count VIII, makes one passing reference to a "special relationship." Doc. No. 1-2 at 19. This is a distinct theory of liability apart from the state-created danger doctrine. Plaintiff makes no other reference in the complaint to any special relationship between himself and the school district. To the extent plaintiff raises a substantive due process claim based on the

be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create any substantive rights. Instead, the statute provides a remedy for violations of constitutional rights where the alleged violation was committed by a person acting under the color of state law. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.), cert. denied, 516 U.S. 858 (1995); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir.1993). "The first step in evaluating a Section 1983 claim is to identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all." *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013) (internal citations and quotations omitted).

### 1. Substantive due process right to bodily integrity

Here, plaintiff asserts violations of his substantive due process rights under the Fourteenth Amendment, specifically his right to bodily integrity.[6] Doc. No. 1-2 ¶¶ 65–90. The Supreme Court has long established that, "[a]s a general matter, ... a State's failure to protect an individual against

_____

special relationship exception, it is without merit. "The Third Circuit has consistently held that a special relationship does not exist between a school and its students." *D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. CV 17-1553, 2017 WL 6557560, at *3 (E.D. Pa. Dec. 22, 2017); *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013), as amended (June 14, 2013); *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1373 (3d Cir. 1992); *Nicini v. Morra*, 212 F.3d 798, 807–08 (3d Cir. 2000); *Veronia School District 47J v. Acton*, 515 U.S. 646 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have such a degree of control over children as to give rise to a constitutional duty to protect.") (dicta) (internal citations and quotations omitted).

[6] Deprivation of bodily integrity does not have distinct legal standing. *See Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-00032, 2017 WL 3492542, at *4 (W.D. Pa. Aug. 15, 2017); *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 231 (W.D. Pa. 2015). As discussed in this section, for plaintiff to assert a viable constitutional claim, he must do so under the state-created danger theory. Absent this limited exception, the state otherwise has no duty to protect plaintiff's constitutional liberty interest in his personal bodily integrity. *See* sources cited *id.*; *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008).

private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 197 (1989). Indeed, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. . . Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id*.

Although the state generally has no affirmative duties of care and protection, there are two exceptions. The first is known as the "special relationship" exception. It applies when the state "takes a person into custody and holds him there against his will." *Id.* at 199–200.[7] The second exception, known as the "state-created danger" doctrine, applies when "the state's own actions create the very danger that causes the plaintiff's injury." *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013); *Kneipp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996). *Kneipp* was the first Third Circuit case applying the state-created danger doctrine; there, the Court held that a private citizen could assert a substantive due process violation when police officers themselves created the danger that caused the injury. *Id.* at 1213.

### 2.    The state-created danger doctrine

To prevail under the state-created danger doctrine, a state actor must "*create* or *enhance* a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due

---

[7] The *DeShaney* Court explained:

> In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the 'deprivation of liberty' triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

489 U.S. 189, 205–06 (1989).

process." *Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (emphasis in original). Plaintiff

must prove the following four elements:

1) the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)) (citations and internal

quotation marks omitted).

In applying these elements to the instant case, the Court finds plaintiff has failed to state

an actionable claim.

As to the first element, foreseeability "requires that officials were actually aware, and thus

on notice, of the risk of harm." *Id.* at 233 (citing *Henry v. City of Erie*, 728 F.3d 275, 282 (3d Cir.

2013)); *Gremo v. Karlin*, 363 F. Supp. 2d 771, 784 (E.D. Pa. 2005) ("Under Third Circuit

jurisprudence, a harm is foreseeable when a state actor has actual awareness, based on concrete

information, of a risk of harm to an individual or class of individuals such that the actor is on notice

that his or her act or failure to act significantly enhances that risk of harm."). "Fairly direct" refers

to actions that cannot be "separated from the ultimate harm by a lengthy period of time and

intervening forces and actions." *Id.* (quoting *Henry*, 728 F.3d at 285) (internal quotations omitted).

Here, plaintiff argues that the foreseeability element is satisfied because (1) the school

district was allegedly aware of Hribal's serious mental illness and violent propensities, and (2) the

school district knew that Capital would provide inadequate security. Doc. No. 32 at 11. In his complaint, plaintiff avers, without any supporting facts, that the school district was "aware" of Hribal's violent tendencies and mental illness. Doc. No. 1-2 ¶ 29. He further asserts that the school district knew Capital would provide inadequate security because Capital hired a 70-year-old security guard. *Id.* ¶¶ 24–25; Doc. No. 32 at 11. Plaintiff further contends that the school district hired Capital as mere "window dressing" to placate students and parents, without any intention of providing meaningful security to students. Doc. No. 1-2 ¶ 86.

Assuming all of the allegations in the complaint are true, and when viewed in the light most favorable to plaintiff, the Court finds that they do not rise to the level of foreseeability as contemplated by the Third Circuit. Nothing about these allegations suggest that the school district had any indication that Hribal would bring knives to school and stab 20 of his classmates. The complaint makes no mention of any previous instances of violence — nor does it provide any concrete information of any kind — suggesting that the school had reason to know Hribal would attack his classmates, particularly in this matter.[8] *See, e.g, Mohammad v. Sch. Dist. of Phila.*, 335 F. Supp. 2d 799, 784 (E.D. Pa. 2005), aff'd, 196 F. App'x 79 (3d Cir. 2006) ("The cases in which the Courts have found this element satisfied generally involve situations where a specific harm to a specific person was foreseeable."); *see also D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. CV 17-1553, 2017 WL 6557560, at *4 (E.D. Pa. Dec. 22, 2017) (holding that a student who stabbed a classmate in the face with a pencil was not foreseeable harm, despite the school knowing

---

[8] Plaintiff's bare allegations that the school district was aware of Hribal's violent propensities and mental illness amounts to a legal conclusion. The Court recognizes that, at this early stage, plaintiff need not include detailed factual allegations in the complaint. *See supra* Part IV. The Court further recognizes that plaintiff has not had the benefit of discovery. Nevertheless, a bare allegation that the school district knew about Hribal's violent propensities, without any supporting facts, is legally deficient under the state-created danger doctrine, even at the motion to dismiss stage.

that the student had previously assaulted fellow classmates); *Gayemen v. Sch. Dist. of the City of Allentown*, No. 14-CV-1518, 2016 WL 3014896, at *9 (E.D. Pa. May 26, 2016), aff'd sub nom. *Gayemen v. Sch. Dist. of City of Allentown,* 712 F. App'x 218 (3d Cir. 2017) (holding that the foreseeability element was not satisfied when plaintiff failed to offer any evidence demonstrating that school officials were aware assailants had previously assaulted anyone else in the school). Even if school officials had reason to believe Hribal had violent propensities or some underlying mental illness, plaintiff must plead more to show that those officials had *actual awareness*, based on some type of *concrete* information, that the type of harm in this case was foreseeable and that the school district's affirmative conduct would significantly increase the risk of harm.

Similarly, plaintiff fails to plead that the harm was a "fairly direct" result of any school official's affirmative acts. "A plaintiff must plead that the state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit. It is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm." *D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. CV 17-1553, 2017 WL 6557560, at *4 (E.D. Pa. Dec. 22, 2017) (quoting *Henry v. City of Erie*, 728 F.3d 275, 285 (3d Cir. 2013) (internal quotations omitted." As will be discussed, *infra*, plaintiff has failed to allege any affirmative acts that would give rise to liability under the state-created danger doctrine. In this Court's estimation, the school district's actions (or lack thereof) — that is, its alleged failure to implement proper security measures, and its purported knowledge that the 70-year-old security guard was incapable of stopping a security threat — do not provide a sufficient basis to establish causation.

With respect to the second element, state officials must act "with deliberate indifference or the intent to cause harm." *Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-00032, 2017 WL

3492542, at *6 (W.D. Pa. Aug. 15, 2017), dismissed, No. 17-2899, 2018 WL 1224409 (3d Cir. Jan. 17, 2018). Deliberate indifference exists when a party has consciously disregarded a substantial risk of serious harm, or when a risk of harm is so patently obvious that the party should have known of it. *Id.* "Under this standard, the danger must have been foreseeable to the state actors and the state's actions must evince a willingness to ignore that foreseeable risk of danger." *Gremo v. Karlin*, 363 F. Supp. 2d 771, 788 (E.D. Pa. 2005) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997) (internal quotations omitted).

As to the second element, plaintiff argues that the school district acted with culpability that shocks the conscience because (1) it had plenty of opportunity to put in place safety measures that could have prevented Hribal from carrying out the attack, and (2) it hired Capital to placate parents and students without intending to provide real security. Doc. No. 32 at 12. More generally, plaintiff makes a policy argument that the school district knew of the "extreme danger associated with mass school violence," and thus its actions (or lack thereof) are sufficiently "conscience shocking." *Id.* at 13.

The Court disagrees that the allegations in the complaint establish the requisite degree of culpability to state a claim under the second element. "This standard requires a willingness to ignore a foreseeable danger or risk . . . It necessarily follows that as threshold matter, the danger must be foreseeable to demonstrate deliberate indifference." *D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. CV 17-1553, 2017 WL 6557560, at *5 (E.D. Pa. Dec. 22, 2017) (internal quotations and citations omitted). As discussed above, plaintiff has failed to establish on the face of the complaint that school officials acted in willful disregard of a foreseeable danger. As this Court has previously explained, deliberate indifference occurs when a state official acts in conscience disregard of a substantial risk of harm, or when that risk is so "patently obvious that

the party should have known of it." *Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-00032, 2017 WL 3492542, at *6 (W.D. Pa. Aug. 15, 2017), dismissed, No. 17-2899, 2018 WL 1224409 (3d Cir. Jan. 17, 2018); *see also L.R. v. Sch. Dist. of Philadelphia*, 836 F.3d 235, 246 (3d Cir. 2016).

Plaintiff avers that the school district (1) failed to properly implement and maintain safety measures in the event of emergencies, despite knowing that students faced a substantial risk of harm; (2) failed to ensure that Capital provided adequate security; and (3) hired Capital as a means to placate parents and students — mere "window dressing" for security. Despite plaintiff's creative arguments, these allegations, at most, amount to negligence, which is insufficient to establish culpability that shocks the conscience. Moreover, to the extent that plaintiff raises policy arguments about schools being aware of the risks of mass violence, this Court is not in a position to expand the confines of the Constitution on grounds of policymaking. Rather, state and federal legislatures retain the authority to respond to these kinds of situations, and to fashion appropriate legal remedies. Although this Court is naturally moved by the horrific circumstances surrounding plaintiff's injury, it is prudent to remember the reasoning in *DeShaney*:

> Judges and lawyers, like other humans, are moved by natural sympathy in a case like this to find a way for [plaintiffs] to receive adequate compensation for the grievous harm inflicted upon them. But before yielding to that impulse, it is well to remember once again that the harm was inflicted not by the State of Wisconsin, but by [the young boy's] father.

489 U.S. 189, 202–03 (1989). A court may have sincere sympathy for plaintiff, his family, and all the other victims of this tragedy, but it is well to remember that Alexander Hribal, not the school district, inflicted the blows in this case.

The third element asks whether there is "some relationship"[9] between the state actor and the plaintiff. "In the state-created danger context, the relationship between a state and a plaintiff need not be 'custodial' ... but rather requires contact between the parties such that the plaintiff was a foreseeable victim in tort." *Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-00032, 2017 WL 3492542, at *7 (W.D. Pa. Aug. 15, 2017) (quoting *Knellinger v. York Street Prop. Dev., LP*, 57 F. Supp. 3d 462, 470 (E.D. Pa. 2014).

Here, plaintiff has pled sufficient facts to establish a relationship under the third element. Plaintiff was a member of a discrete class of persons — students at Franklin Regional High School — such that he could be viewed as a foreseeable victim in tort. Doc. No. 1-2 ¶¶ 2, 3, 11. *Gayemen*, 2016 WL 3014896, at *9 ("This Court ... concludes that [plaintiff's] attendance at Allen [High School] constituted a relationship between him and the School District such that he would be a foreseeable victim of an alleged danger created by the School District."); *see also Gremo v. Karlin*, 363 F. Supp. 2d 771, 789 (E.D. Pa. 2005).

Finally, as to the fourth element, there must be "an allegation and subsequent showing that state authority was affirmatively exercised." *Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006). "It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Id*.

This fourth prong can be difficult to apply. Courts have readily admitted that "the line between action and inaction may not always be clear." *Bright,* 443 F.3d at 282; *see also Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013), as amended (June 14, 2013). The Third Circuit has

---

[9] This relationship element does not require the same showing as the "special relationship" exception for imposing liability under Section 1983 based on violations of the due process clause. *See supra* notes 5–7; *see also D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. CV 17-1553, 2017 WL 6557560, at *5 (E.D. Pa. Dec. 22, 2017); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 912 (3d Cir. 1997).

elaborated, however, that the issue raised under the fourth element is whether "the state actors 'used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur." *Bright*, 443 F.3d 276, 283 (3d Cir. 2006) (internal citations and quotations omitted). Ultimately, the fourth element intends to distinguish cases where state officials might have done more, from cases where officials created or increased the risk itself. *Morrow*, 719 F.3d 160, 179 (3d Cir. 2013).

Even if plaintiff has pled sufficient facts to establish the first three elements, plaintiff makes no allegations that satisfy the fourth prong. This insufficiency, alone, warrants dismissal of the claim. *Giovinco v. Foster*, No. CIV.A. 3:CV-03-1569, 2003 WL 23573864, at *3 (M.D. Pa. Dec. 15, 2003). As discussed above, plaintiff attempts to couch inaction as affirmative acts. To the extent that any of the allegations in the complaint raise potential affirmative conduct — for example, school officials hiring a security guard — these acts in no way increased the risk of harm to plaintiff. Taken as true and viewed in the light most favorable to plaintiff, the facts establish that the school district:

- failed to develop and implement adequate safety procedures in the event of an emergency (Doc. No. 1-2 ¶ 71, 72);

- failed to ensure Capital provided adequate security (*id.* ¶ 75); and

- retained Capital knowing that it might not provide adequate protection in the event of an emergency (*id.* ¶ 86).

Under the most generous reading of the complaint, plaintiff has also established that school officials knew about Hribal's violent propensities and took no action. *Id.* ¶ 29.

These allegations do not give rise to an actionable claim because they align with those cases where officials might have done more, as opposed to those cases where officials created or increased the risk of harm itself. *Morrow*, 719 F.3d 160, 179 (3d Cir. 2013).

Instructive on this analysis are two seminal Third Circuit opinions addressing the affirmative-action requirement. In *Morrow*, parents complained to school officials that a student had been bullying their two daughters. The bully even physically attacked those children in the school's lunchroom. *Id.* at 164. The school suspended the bully for three days. *Id.* Nevertheless, the bully continued to physically harass the children. The harassment continued to escalate; at some point, the school district was given two "no-contact" orders after the bully was placed on probation by a juvenile criminal court based on previous assaults of the Morrow children. *Id.* School officials still took no action, and one of the Morrow children was again assaulted. Ultimately, the school district suggested that the parents enroll their daughters in a different school.

The *Morrow* Court ultimately found that the state-created danger exception did not apply because the parents failed to allege any affirmative action by school administrators that made the children "more vulnerable than they would have been had the administrators stood by and done nothing at all." *Id.* at 178. "Although the suspension was an affirmative act by school officials, we fail to see how the suspension created a new danger for the Morrow children or rendered them more vulnerable to danger had the state not acted at all." *Id.* The *Morrow* Court further explained that the school district's failure to expel the bully, and its alleged failure to enforce a disciplinary policy, did not trigger a duty to protect. *Id.* Although school officials might have done more, they did not increase the risk of harm itself. *Id.* at 179.

By contrast, in *Kneipp v. Tedder*, 95 F.3d 1199, 1201 (3d Cir. 1996), the Third Circuit held that police officers engaged in affirmative conduct that gave rise to actionable claims under the

state-created danger exception because those officers created the danger that caused the injury. In *Kneipp*, police officers stopped Kneipp and her husband for causing a disturbance on a highway while they were walking home from a bar. The Kneipps were only one-third of a block from their home. *Id.* at 1201. Kneipp was unable to stand by herself because she was so severely intoxicated. *Id.* at 1201–03. Her husband asked the police officers if he could leave to tend to their young son who was home with a babysitter. *Id.* at 1202. The police officer allowed the husband to leave, and he assumed the officers would take care of his wife due to her inebriated state. Instead, the officers sent Kneipp home alone. She was forced to walk home alone in the cold, and she subsequently fell down an embankment and suffered hypothermia resulting in permanent brain damage. *Id.* at 1201–03.

The *Kneipp* Court found that the state acted affirmatively in creating a danger because the officers put the woman "in a worse position after the police intervened than she would have been if they had not done so." *Id.* at 1209. "It is conceivable that, but for the intervention of the police, [the husband] would have continued to escort his wife back to their apartment where she would have been safe." *Id.* Because the affirmative acts of the police created the dangerous situation, they were required to take additional measures to ensure her safety. *Id.* at 1210.

Here, plaintiff alleges no facts where a state actor created a dangerous situation.[10] One cannot say that the school administrators placed plaintiff in a worse position than had its officials

---

[10] In fact, plaintiff fails to even identify a state actor by name in his complaint. None of the parties raised this issue in their briefing. Nevertheless, the fourth element of the state created danger theory requires "a state actor" to affirmatively create a danger or otherwise render a citizen more vulnerable to it. *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006). Courts applying the state created danger theory often lump municipalities and individual state actors together when performing the analysis. *See Sciotto v. Marple Newton Sch. Dist.*, 81 F. Supp. 2d 559, 573 (E.D. Pa. 1999). This approach has caused confusion. *See, e.g., Nawuoh v. Venice Ashby Cmty. Ctr.*, 802 F. Supp. 2d 633, 639 (E.D. Pa. 2011) (discussing the distinction between municipal liability and state-created danger claims and acknowledging that the state-created danger theory by itself is not enough to implicate municipal liability). The Court need not address

not acted at all.  Similar to the facts in *Morrow*, it is alleged here that school administrators did not implement or enforce adequate safety measures.  These allegations properly suggest that the school officials could have done more to protect students such as plaintiff.  Nevertheless, the administrators' conduct in hiring a security company — even if they suspected that the security might be inadequate — did not render plaintiff *more* vulnerable to harm than had they not hired a security company at all.  Plaintiff raises an interesting argument about the school district attempting to placate students and parents — "window dressing" for adequate safety.  Despite the argument's novelty, it is unpersuasive.  Because plaintiff unsuccessfully seeks to couch acts of omission as affirmative acts, his constitutional claim fails under the fourth element.[11]

### 3.    *Monell* liability

As a final matter, the Court interprets plaintiff's complaint at Count VII as raising a municipal liability claim.  Although the pleading is not a model of clarity as to this claim, plaintiff avers that the school district's actions demonstrated an "adopted practice, custom and policy of deliberate indifference to plaintiff's health, safety and welfare."  Doc. No. 1-2 ¶ 74.  Specifically, plaintiff avers that these "practices, customs and policies are demonstrated by the fact that . . . [the

---

whether plaintiff's state-created danger claim is insufficient because he failed to sue, or even name, any individual state actors.  Although the claim may also be deficient on this basis, it suffices to say that plaintiff fails to identify in the complaint any individual state actors who affirmatively created a danger.

[11] The Court briefly notes its recent decision in *Doe v. Plum Borough Sch. Dist.*, No. 2:17-CV-00032, 2017 WL 3492542, at *7 (W.D. Pa. Aug. 15, 2017).  There, this Court found that the affirmative-action requirement had been satisfied when school officials took affirmative steps to actively dissuade students from reporting rumors of sexual activities between teachers and students.  Officials also took steps to actively conceal and otherwise cover-up improper conduct occurring within the school.  That conduct, the Court reasoned, caused greater risk of harm to those students who ultimately were sexually abused by teachers at the school.  *Id.*  The *Plum* case, and other cases where school districts took active steps to affirmatively hide or cover up dangerous situations, are readily distinguishable from the instant set of facts.

school district] failed to properly implement, enforce, or maintain procedures in the event of emergencies," such as the one that occurred. *Id*. ¶ 75. He further avers that the school district "failed to ensure that defendant Capital was providing adequate security to the premises." *Id*.

"Courts recognize that municipal government units may constitute 'persons' against whom a claim may be raised under § 1983." *Doe v. Plum Borough Sch. Dist*., No. 2:17-CV-00032, 2017 WL 3492542, at *7 (W.D. Pa. Aug. 15, 2017), dismissed, No. 17-2899, 2018 WL 1224409 (3d Cir. Jan. 17, 2018) (*citing Jackson v. City of Erie Police Dep't*, 570 F. App'x 112, 114 n. 2 (3d Cir. 2014)). Nevertheless, in *Monell v. New York City Dept. of Social Serv*., 436 U.S. 658, the Supreme Court held that

> … a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id*. at 694. To that end, municipality liability cannot be based upon a theory of respondent superior or vicarious liability. *Id*. at 694, *see also Kneipp v. Tedder*, 95 F.3d 1199, 1211 (3d Cir. 1996). Rather, the plaintiff must show that the "municipality itself supported the violation of rights alleged" through the implementation of a policy or custom. *Andrews v. City of Philadelphia*, 895 F. 2d 1469, 1480 (3d Cir. 1990); *Monell*, 436 U.S. at 692–95.

Here, plaintiff has failed to state a municipal liability claim for at least two reasons.

First, plaintiff fails to identify the specific policy or policymaker at issue. Conclusory allegations about a general lack of policies concerning safety measures is insufficient. *See D.M. by Sottosanti-Mack v. Easton Area Sch. Dist.*, No. CV 17-1553, 2017 WL 6557560, at *8 (E.D. Pa. Dec. 22, 2017). "[A] complaint must include specific factual allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." *Kelty v. City of*

*Philadelphia*, No. CV 16-0306, 2016 WL 8716437, at *4 (E.D. Pa. June 10, 2016) (quoting *Torres v. City of Allentown*, No. 07-1934, 2008 U.S. Dist. LEXIS 50522, at *13 (E.D. Pa. June 30, 2008)).

Second, and equally problematic, plaintiff has not identified a constitutional violation for which he can assert an actionable claim for municipal liability. "A policy, practice, or custom is only unconstitutional because it allows *another* unconstitutional violation." *Giovinco v. Foster*, No. CIV.A. 3:CV-03-1569, 2003 WL 23573864, at *4 (M.D. Pa. Dec. 15, 2003); *see also Sciotto v. Marple Newtown Sch. Dist.*, 81 F. Supp. 2d 559, 576 (E.D. Pa. 1999). As discussed in Part VI(C)(1)–(2), *supra*, plaintiff asserts a violation of his substantive due process right to bodily integrity; in this context, that claim is only actionable under the state-created danger doctrine. Because plaintiff has failed to state a claim under that theory, his *Monell* claim must be dismissed. *See, e.g., Giovinco v. Foster*, No. CIV.A. 3:CV-03-1569, 2003 WL 23573864, at *4 (M.D. Pa. Dec. 15, 2003) ("Because I have already held that Plaintiffs make no allegations which establish that the state created a danger . . . Plaintiffs do not allege any other constitutional violation, there can be no liability for any policy, practice, or custom [the school district] maintained."); *Gayemen v. Sch. Dist. of the City of Allentown*, No. 14-CV-1518, 2016 WL 3014896, at *12 (E.D. Pa. May 26, 2016), aff'd sub nom. *Gayemen v. Sch. Dist. of City of Allentown*, 712 F. App'x 218 (3d Cir. 2017); *Magwood v. French*, 478 F. Supp. 2d 821, 832 (W.D. Pa. 2007) (collecting cases); *D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1376 (3d Cir. 1992).

Finally, the Court briefly addresses plaintiff's demand for punitive damages against the school district. "Punitive damages claims are barred against municipalities under § 1983." *Mitros v. Cooke*, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001) (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). To the extent plaintiff seeks punitive damages against the school

district, those claims will be dismissed with prejudice. Plaintiff's Section 1983 claims will otherwise be dismissed without prejudice.

**VII.    Conclusion**

For the reasons stated herein, plaintiff has stated a claim under Pennsylvania law regarding the parents' alleged negligence. The actionable claim is not for vicarious liability, but for the parents' own alleged acts in making the injury possible. The Court has found that plaintiff has sufficiently alleged that the parents ought to have foreseen the injury and that their negligence is the proximate cause of that injury. Similarly, the Court has found that plaintiff has alleged sufficient facts that, if proven at trial, could support imposition of punitive damages.

Second, plaintiff has alleged sufficient facts that could support punitive damages against the security company. The Court notes that, with respect to both the parents' motion to dismiss and Capital's motion to dismiss, plaintiff will face a substantial burden moving forward. Nevertheless, the well-pleaded facts in the complaint, taken as true, render those claims plausible.

Third, plaintiff has failed to state an actionable Section 1983 claim. In this context, alleged violations of a due process right to bodily integrity is only actionable under the state-created danger doctrine. That is because the state otherwise has no duty to protect a citizen from violence caused by another private citizen. Here, the Court has found that plaintiff has failed to allege any facts that would satisfy the elements of that doctrine. In particular, he has failed to identify (1) that the harm was foreseeable and fairly direct; (2) that a state actor acted with culpability to shock the conscience; or (3) that a state actor acted affirmatively to create a danger to him. While school officials might have done more, their actions did not increase the risk of harm itself. Finally,

because plaintiff has not pled sufficient facts to show a constitutional violation, his municipal liability claim also fails as a matter of law.

In granting the school district's motion to dismiss, the Court will permit leave to amend. The Court cannot say with certainty that amendment would be futile, so his Section 1983 claims will be dismissed without prejudice.  *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 246 (3d Cir. 2008); *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) ("Our precedent supports the notion that in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Ne. Revenue Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 103 (3d Cir. 2017).  Plaintiff will have 21 days to file an amended complaint. If amendment is not forthcoming within that time, his claims against the school district will be dismissed with prejudice.  In that instance, the remaining state law claims will then be remanded. *See* 28 U.S.C. § 1367(c)(3).

An appropriate order follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Dated:  November 21, 2018

cc/ecf:  All counsel of record.